UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SONIA PARAJON,                                          :
                                                        :   **ORDER REMANDING CASE**
                           Plaintiff,                   :   **FOR FURTHER ADMINISTRATIVE**
                                                        :   **PROCEEDINGS**
           -against-                                    :
                                                        :   08 Civ. 4815 (AKH)
                                                        :
MICHAEL J. ASTRUE, Commissioner of                      :
Social Security,                                        :
                                                        :
                           Defendant.                   :
-------------------------------------------------------------x
ALVIN K. HELLERSTEIN, U.S.D.J.:

## I.     Introduction

        In this action, Plaintiff Sonia Parajon seeks review and reversal of a final determination by the Social Security Administration (SSA) denying her disability benefits. The Commissioner argues that the agency's decision is supported by substantial evidence and moves for judgment on the pleadings. For the reasons stated below, I deny the Commissioner's motion, and grant Plaintiff's motion, to the extent that Plaintiff requests that the case be remanded for a new hearing.

## II.    Procedural History

        Plaintiff applied for disability insurance benefits on April 4, 2006. Her application was denied on June 22, 2006. She initially claimed that she had been disabled since June 1, 2005, when she began to suffer from spinal and knee impairments as well as depression. However, she later amended her claim, admitting that she had worked full-time until January 4, 2006. See Tr. 41, 416-17.[1] Plaintiff requested an administrative hearing, which was held on June 20, 2007. Considering the case de novo, an administrative law judge ("ALJ") denied the application on July 19, 2007 after a hearing at which Plaintiff was represented by counsel. The

---

[1] "Tr." refers to the court transcript of the administrative record filed October 31, 2008.

1

determination by the ALJ became final when the Appeals Council denied Plaintiff's request for review on April 15, 2008.

### III.   Legal Standard

An individual may request judicial review by a district court of a final determination by the Commissioner of Social Security.  42 U.S.C. § 405(g).  The district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."  Id.  The Social Security Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  Id.  Therefore, the district court does not engage in a de novo determination of whether or not the claimant is disabled, Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999), but instead determines whether correct legal standards were applied and whether substantial evidence supports the Commissioner's decision.  See 42 U.S.C. § 405(g); see also Pollard v. Halter, 377 F.3d 183, 188 (2d Cir. 2004).  If the court finds that substantial evidence supports the determination, it must uphold the Commissioner's decision, even if substantial evidence supports the Plaintiff's position as well.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).  Evidence supporting a decision is "substantial" if reasonable minds might accept the evidence as adequate.  Pollard, 377 F.3d at 188 (citing Richardson v. Perales, 402 U.S. 389, 407 (1971)).  The substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts.  Rodriguez v. Califano, 431 F. Supp. 421, 423 (S.D.N.Y. 1977).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medially determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

2

last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. § 423(d)(2)(A).

The Social Security Administration has promulgated a five-step procedure for evaluating disability claims.  The Court of Appeals has interpreted this five-step procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa, 168 F.3d at 77.  The burden rests on the claimant through the first four steps.  Thus, the claimant must prove that he is unable to perform prior work activity.  Once the claimant proves that his severe impairment prevents him from performing his past work, the burden shifts to the Commissioner at the fifth stage of the analysis.  Using the residual functional capacity assessment performed at step four, the Social Security Administration must establish at the fifth step that the claimant can perform alternative substantial, gainful work that exists in significant

3

amount in the national economy.  20 C.F.R. § 404.1520(e); see Snipe v. Barnhart, No. 05 Civ. 10472 (LAP) (AJP), 2006 WL 2390277, at *9 (S.D.N.Y. Aug. 21, 2006).

A Rule 12(c) motion may be granted "where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988) (citations omitted).

### IV.    Facts

Plaintiff was born in 1958 and has lived in the United States since 1988.  See Tr. 19.  From 1995 to 2004, she worked as a sewing machine operator.  See Tr. 19, 58, 66, 82.  In this job, she sewed curtains and cut fabric, and regularly lifted more than twenty pounds.  See Tr. 58, 417-18.  Starting in June 2004, she worked as a home health attendant.  See Tr. 58, 79, 89, 416-17.  Plaintiff testified that this job involved lifting up to twenty-five pounds and standing for up to six hours each workday.  See Tr. 79.  She complained of disabling pain in her chest and abdomen in April 2005, and stopped working entirely in January 2006, due to severe headaches and back pain.  See Tr. 106, 160.

Plaintiff then applied for disability benefits, complaining of frequent headaches, knee pain, neck pain, and back pain, as well as inflammation in her hands and shoulders.  She testified that the pain was constant, and that medication helped only slightly.  She claimed that she could not sit for more than thirty minutes before experiencing lower back pain.  Plaintiff also saw a neurologist for depression, but had not seen a psychiatrist, though she claimed that she planned to begin seeing one.  See Tr. 425-27, 431-32.

However, Plaintiff stated that she was reasonably active and was able to go to appointments alone and to go on walks.  She stated that she went to the supermarket, performed

4

basic household cleaning chores (other than mopping), prepared her own meals, and attended church every Sunday. She lives in a third-floor, walk-up apartment. See Tr. 86, 417, 432-33.

The ALJ concluded that the medical evidence before it suggested that, although Plaintiff suffered pain, she nonetheless could perform a range of light, unskilled jobs. In October 2005, an MRI of Plaintiff's spine revealed degenerative changes, cervical spondylosis at C5-C6 with a minimal broad-based bulging disc, and no spinal stenosis. See Tr. 110. An x-ray of Plaintiff's cervical spine was negative. See Tr. 328. An MRI of her left shoulder revealed tendinosis of the suprasinatus tendon. See Tr. 329. Two weeks later, another MRI of Plaintiff's lumbar spine showed degenerative changes at the L4-L5 level, a bilateral bulging disc creating bilateral foramina and central canal stenosis, and "hypertrophy of ligamentum flavum." See Tr. 112, 330.

In January 2006, Dr. Florimon, the treating physician, saw Plaintiff twice. She complained of headaches, an inability to sleep, abdominal pain, and back pain. In both instances, however, Dr. Florimon's physical examination was otherwise normal. See Tr. 152-54. Also in January 2006, Plaintiff was seen by a neurologist, Dr. Bajaj. Dr. Bajaj found tenderness and pain on the lumbar spine, but a neurological assessment revealed normal sensation and reflexes. Further testing, including a CT scan of Plaintiff's head on March 23, 2006, revealed left basal ganglia microcalcification. See Tr. 116-21.

From January to March 2006, Plaintiff saw Dr. Ortiz, a gastroenterologist, for monthly examinations. A gastrointestinal endoscopy revealed an impression of gastritis. See Tr. 123-24, 288-90. Plaintiff visited Dr. Florimon three times in February and March 2006 with complaints of pain, and Dr. Florimon's findings were normal, except that they indicated a heart murmur. Later in March 2006, a sonogram of Plaintiff's abdomen and kidneys, as well as an

5

EKG, also came back normal.  See Tr. 155-57A, 174-78.  An April 2006 examination of Plaintiff by Dr. Florimon resulted in normal findings for the neck, heart, and lungs, and a CT scan that month came back normal.  An x-ray of her right knee revealed effusion at the suprapatellar bursa, and, after another examination, Dr. Florimon recorded that Plaintiff complained of severe neck, shoulder, and back pain.  However, few clinical findings supported the diagnosis, except that Plaintiff complained of lumbar spine tenderness upon percussion by Dr. Florimon.  See Tr. 158A-59, 185, 187-88, 332-36.

In May 2006, a mammogram, taken after complaints of pain, came back normal.  An examination by Dr. Florimon revealed normal findings for the neck and extremities.  In the same month, Dr. Lewis-Fernandez conducted a liver function test, which revealed elevated readings, but upon further testing those readings were considered only mildly elevated.  The tests revealed that Plaintiff had had hepatitis A in the past but was negative for hepatitis B and C.  See Tr. 162, 190-96.  Also in May 2006, Dr. Finger, a consulting internal medicine physician, examined Plaintiff and reported normal findings except for complaints of pain and mild swelling of the right knee.  A neurological examination came back normal.  Dr. Barash, a consulting psychiatrist, examined Plaintiff and found her to be "a little sad" with "depressed feelings."  Dr. Barash diagnosed Plaintiff with depressive disorder NOS ("not otherwise specified") with anxious features, but ruled out major depressive disorder and personality disorder.  See Tr. 125-35A.

Plaintiff visited Dr. Florimon twice in June 2006 with complaints of knee pain, but no clinical findings were made.  Dr. Balmaceda, a neurologist, examined Plaintiff in the same month, and again in October 2006, but made no positive clinical findings other than diagnosing depression.  An August 12, 2006 MRI of Plaintiff's brain was unremarkable and an

6

MRI of her spine the same day showed no neural foraminal stenosis at any disc level and normal signal intensity in the cervical spinal cord.  However, small or mild osteophytic disc/ridge complexes were shown, along with some flattening of the ventral fluid column and some impingement of the ventral cord.  See Tr. 164-65, 268-70, 276-79, 199-201, 273-75.

In August and September 2006, Plaintiff visited Dr. Florimon, complaining of neck, foot, abdominal, and right knee pain.  Dr. Florimon's findings, after both examinations, were normal.  On October 24, 2006, Plaintiff was admitted to the hospital, complaining of chest pain and shortness of breath.  Numerous tests were conducted, including an exercise stress test, but neither coronary arterial disease nor any significant cardiac condition was found.  Plaintiff was discharged from the hospital in stable condition.  She saw Dr. Florimon in October and December, complaining of chest and back pain as well as headaches and foot pain.  Dr. Florimon determined that Plaintiff had a urinary tract infection and a cough.  See Tr. 166-72A, 218-59.

In November 2006, Plaintiff again saw Dr. Balmaceda, who reported no clinical findings except a vascular headache.  He repeated the diagnosis when Plaintiff visited him the following month.  In January 2007, Dr. Balmaceda again examined Plaintiff and reported no clinical findings.  In April 2007, Dr. Balmaceda made a diagnosis of diverticulitis, ulcer, and knee pain, but did not indicate which knee was affected.  Dr. Balmaceda did not provide any further clinical findings.  See Tr. 279-85.

On March 23, 2007, Plaintiff was admitted to the hospital, complaining of chest pressure, shortness of breath, and nausea.  After a cardiac stress test revealed no evidence of coronary artery disease, she was discharged in stable condition.  However, a CT scan did reveal diverticulitis in the colon.  After another examination by Dr. Florimon on June 1, 2007 for complaints of pain, Dr. Florimon diagnosed a urinary tract infection.  On June 5, 2007, Dr.

Florimon diagnosed Plaintiff, based on the previous tests, with severe bilateral shoulder pain, which was worse on the left, degenerative disc disease of the lumbar spine with central canal stenosis, and severe depression.  See Tr. 218-59, 340-45, 363-66, 369.

### V.    The ALJ's Decision

The ALJ found that (a) Plaintiff had not engaged in substantial gainful activity since January 4, 2006, and (b) Plaintiff had suffered from a combination of osteoarthritus of the cervical and lumbosacral spines and unspecified depressive disorder ("NOS").  The ALJ considered her condition "severe" based on the requirements of 20 C.F.R. § 404.1520(c).  Tr. 21-22.  The ALJ found that these impairments caused Plaintiff to be "unable to perform any of her past relevant work," and restricted Plaintiff's ability to perform basic work activities.  Id.; see 20 C.F.R. § 404.1565.

However, the ALJ found that Plaintiff's impairments were not listed in the Social Security table (20 C.F.R. Part 404, Subpart P, App. 1, Reg. 4).  The ALJ found that Plaintiff had the residual functional capacity "to sit for most of an eight-hour work day; to stand or walk up to a total of six hours in a work day; to lift/carry up to 20 pounds occasionally; and to engage only in work activity that is simple, routine, and low in stress."  Tr. 22.  The ALJ found that this residual functional capacity was consistent with an ability "to perform a significant range of light work."  See Tr. 23; see also 20 C.F.R. § 404.1567.  Although Plaintiff's past relevant work was more strenuous than her residual functional capacity, the ALJ, following Rule 202.16 of the Commissioner's Medical Vocational Guidelines, determined that Plaintiff could perform a significant number of light jobs.  See Tr. 21-23; see also 20 C.F.R. Part 404, Subpart P, App. 2, § 202.00, Table 1 (Medical-Vocational Guidelines).

The ALJ relied on Dr. Plotz, a medical expert, who testified that, despite many subjective complaints of pain, Plaintiff's medical records contained insufficient clinical findings to disqualify her from light work. See Tr. 21, 434-47.  The ALJ also relied on the testimony of a vocational expert, who identified three light, unskilled jobs—small products assembler, machine tender, and marker—that were consistent with Plaintiff's residual functional capacity and her age, education, and work experience.  See Tr. 21-23, 447-49.  According to the ALJ, the findings of all the other doctors, including those of Plaintiff's treating physician Dr. Florimon, were largely consistent, in that, though they indicated some spinal degeneration and registered Plaintiff's complaints of pain, they did not support Plaintiff's claims of severely limited functionality with specific clinical findings.  See Tr. 21-23.  Quoting the statute and other sources, the ALJ found no medical signs or other evidence to support Plaintiff's complaint.  See Tr. 22-23; see also 20 C.F.R. §§ 404.1567, 404.1520(g).

In sum, the ALJ found that, though Plaintiff was incapable of performing her past relevant work as a sewing machine operator or home health attendant, she retained the sufficient functional capacity to perform a significant range of light work.  See Tr. 22-23.  The ALJ found that there were 2,388,000 available jobs in the national economy consistent with the three types of light work that Plaintiff could perform.  Id.; see 20 C.F.R. Part 404, Subpart P, App. 2, § 202.00, Table 1 (Medical-Vocational Guidelines); see also Heckler v. Campbell, 461 U.S. 458, 467-68 (1983).  Accordingly, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act.  See 42 U.S.C. § 423(d).

## VI.   Discussion

Plaintiff argues that the ALJ failed to apply the treating physician rule properly.  Prior to 1991, this rule required the ALJ to give "substantial weight to the treating physician's

opinion as against other medical evidence." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) (citing Schisler v. Sullivan, 3 F.3d 563, 565 (2d Cir. 1993)).  In 1991, the Commissioner promulgated new regulations, which altered the treating physician rule, and provided that the treating physician's opinion is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  See 20 C.F.R. § 404.1527(d); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); Schaal, 134 F.3d at 503-04.  When the treating physician's opinion is not given controlling weight, the ALJ must consider various factors, such as the nature of the relationship and the evidence that tends to support or contradict the treating physician's opinion, to determine how much weight to give to the opinion, and set forth his or her reasons for the weight assigned to the treating physician's opinion.  20 C.F.R. § 404.1527(d)(2); Pizzo v. Barnhart, 325 F. Supp. 2d 438, 449 (S.D.N.Y. 2004).

In this case, the ALJ determined that the treating physician rule did not require Dr. Florimon's opinion to be given controlling weight.  The ALJ examined Dr. Florimon's records and determined that his conclusions were not well-supported by specific clinical findings.  See Tr. 21, 152-57A, 158A-59, 162, 164-72A, 185, 187-88, 332-36.  Additionally, the ALJ concluded that Dr. Florimon's diagnosis was inconsistent with the other substantial evidence in the record.  Though Plaintiff criticizes the reliability of Dr. Plotz, the ALJ did not rely exclusively on the opinions of Dr. Plotz, but relied also on those of Dr. Finger, a consulting physician who examined Plaintiff and reported largely normal findings.  Tr. 125-35A.  Dr. Plotz's testimony was consistent with Dr. Finger's findings, as well as the findings of the other doctors in the record.

The October 2005 MRI of Plaintiff's spine, performed when she was still working as a home health attendant, revealed some degeneration. Tr. 110, 112, 330. The ALJ determined, however, that this evidence was consistent with a residual functional capacity to perform light work, pursuant to Rule 202.16 of the Commissioner's Medical Vocational Guidelines. Therefore, the ALJ found that Plaintiff was not per se disabled, pursuant to Rule 201.17 of the Guidelines. See 20 C.F.R. Part 404, Subpart P, App. 2, § 201.00, Table 1.

However, Plaintiff subsequently saw a consultative physician, Dr. DeFeo, on September 6, 2007, two months after the ALJ's decision, but before the final decision of the Appeals Council on April 15, 2008, denying Plaintiff's request for review. Tr. 347-50. Dr. DeFeo reviewed Plaintiff's past history, chief complaints, and pertinent medical records. Id. His examination revealed that Plaintiff had a decreased range of motion in her cervical spine. Id. An examination of the lumbo-sacral spine revealed several sites of pain at the extremes of motion and upon percussion, as was found for the hips and pelvis. Tr. 350. Dr. DeFeo viewed this evidence as consistent with fibromyalgia, for which Plaintiff had recently begun taking Lyrica. Id. An examination of the right knee revealed a restricted range of motion and pain upon percussion. Tr. 350-51. There was also swelling of the right ankle. Tr. 351. Based on his examination and a review of Plaintiff's medical records, Dr. DeFeo diagnosed multilevel spondilosis with cervical and lumbo-sacral radiculopathy. Tr. 352. Dr. DeFeo found that Plaintiff's radiculitis contributed to her motor weakness and muscle atrophy, and was consistent with her complaints of pain and the result of his examination. Id. He also diagnosed tendonopathy of the right supraspinatus and found a "derangement" of both knees. Tr. 352-53. Dr. DeFeo found the latter diagnosis to be consistent with MRIs of Plaintiff demonstrating bilateral meniscal tears and his examination of Plaintiff. Tr. 353. Dr. DeFeo concluded that

11

Plaintiff had a "'total' as well as 'permanent'" disability that involved the upper and lower spine as well as the upper and lower extremities.  Id.  He further opined that various medications and physical therapy had not improved her functional capacity or other symptoms such as pain.  Id.  Dr. DeFeo claimed that Plaintiff's x-rays and MRIs were consistent with this assessment, and that Plaintiff's minimal improvements in response to treatment marked her prognosis as "'fair.'"  Id.

Although Plaintiff does not emphasize the point, Dr. DeFeo's examination may constitute new evidence requiring the ALJ's attention.  The Social Security Act, as amended in 1980, provides that

> [t]he court … may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both. . . .

42 U.S.C. § 405(g) (1988).  The Commissioner argues that since Dr. DeFeo's determination was made after the relevant period, it has no bearing on the merits of Plaintiff's appeal, citing Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991).  In Jones, the Court of Appeals established a three-pronged framework for evaluating additional evidence.  It held that such evidence must be (1) new, and not merely cumulative of what is already in the record; and (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative, as well as containing a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently; and further held that (3) the claimant must show good cause for her failure to present the evidence earlier.  Id. at 60 (internal

citations omitted). In Jones, the Court of Appeals remanded the case to the district court in order to determine whether there was good reason for Plaintiff's failure to include in the record a more precise diagnosis of her condition. Id. at 61.

In Cutler v. Weinberger, decided before the 1980 amendments to the Social Security Act, the Court of Appeals remanded a similar case to the ALJ, citing the existence of medical records and corroborating testimony about the plaintiff's condition that was not considered by the ALJ. 516 F.2d 1282, 1285 (2d Cir. 1975), cited in Jones, 949 F.2d at 60. While the court agreed that the Secretary's determination was "at least technically supported by substantial evidence," the court "observed that the Social Security Act is remedial or beneficent in purpose, and, therefore, to be 'broadly construed and liberally applied.'" Id. at 1285 (internal citations omitted). Accordingly, the court noted that remand was often appropriate when relevant, probative, and available evidence "was either not before the Secretary or was not explicitly weighed and considered by him." Id.

In Szubak v. Sec'y of Health & Human Servs., decided after the 1980 amendments, the Third Circuit also remanded to the ALJ to consider new, material evidence, and found that the new evidence did, in fact, relate to that period. 745 F.2d 831, 833 (3d Cir. 1984), cited in Jones, 949 F.2d at 60. Since the additional medical reports in that case were compiled after the Secretary's first decision and could not have been presented at the hearing, the court considered the medical reports "clearly new." Id. Also, it found the medical reports not merely cumulative of evidence in the record because they "set forth appellant's personal history in greater depth, including facts that relate directly to her alleged psychiatric problems" and "appear[ed] to corroborate substantially appellant's subjective complaints of great pain." Id. The court held that "[a]n implicit materiality requirement is that the new evidence relate to the

time period for which benefits were denied." Id.  Finally, the court stated that "it cannot be said that there is no possibility that the five new medical reports would have changed the outcome of the Secretary's decision," as those reports "appear[ed] to corroborate appellant's subjective complaints of pain," and accordingly were "entitled to great weight by the ALJ."  Id.  The court also found that the ALJ should reconsider the evidence regarding the plaintiff's mental condition, since the original report of the government psychiatrist, on which the ALJ relied, differed from the opinions of each of the treating physicians.  Id.

    The medical records in the present case are sufficiently contested to warrant the inclusion of new evidence that would help resolve doubts regarding Plaintiff's condition.  As in Szubak, Dr. DeFeo's report is not merely cumulative of evidence already in the record, but makes a detailed accounting of Plaintiff's past medical records and places them in the context of a new examination.  See Tr. 351-55.  Since Dr. DeFeo's review and examination occurred two months after the administrative hearing, the ALJ could not have considered his report, and there is good cause for considering Dr. DeFeo's report.  Additionally, Dr. Florimon conducted further examinations and issued new reports from March 2007 until January 2008, the majority of which could not have been evaluated by the ALJ before the June 20, 2007 hearing.  Tr. 362-81.  Although the reports were admitted before the Appeals Council, there is no indication in the record that the Council considered the reports.  Tr. 3-7.

    It cannot be said that the reports would not have changed the ALJ's decision, particularly in light of the disagreements between the Commissioner's consulting physicians and Plaintiff's treating physicians.  See Szubak, 745 F.2d at 833; Pizzo, 325 F. Supp. 2d at 449-51.  Considering the emphasis that the ALJ placed on the lack of objective clinical findings in making its initial determination, Plaintiff took appropriate measures during the appeals process

14

to provide corroborating evidence in response to Dr. Plotz's testimony. Therefore, Plaintiff will not unfairly receive another "bite at the apple" when the ALJ considers the new reports. See Szubak, 745 F.2d at 834.

### VII.  Conclusion

For the reasons stated, I remand the case to the Commissioner in order to allow the SSA to consider the reports of Dr. DeFeo and Dr. Florimon with all of the evidence already presented in the case.

The Clerk shall mark the motions (Docs. ## 7 & 14) as terminated.

SO ORDERED.

Dated:   June __, 2009
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

15